IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LEONA M. WEST,

    Movant,

v.                                    Case No. 6:03-cr-00001
                                      Case No. 6:04-cv-00455

UNITED STATES OF AMERICA,

    Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending are Movant, Leona M. West's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed on May 11, 2004 (docket sheet document # 28), and an Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed on August 9, 2004 (# 33). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On February 4, 2003, Defendant, along with her retained counsel, George J. Cosenza, appeared before the Honorable Joseph R. Goodwin, United States District Judge, for the purpose of Defendant's guilty plea to a charge of mail fraud in violation of 18 U.S.C. § 1341. During the hearing, Defendant acknowledged that her fraudulent activities involved her employment as a Family

Support Specialist with the West Virginia Department of Health and Human Resources (DHHR), Office of Family Support. Defendant admitted that she had embezzled approximately $302,000, by causing more than 475 benefits checks to be fraudulently issued in the names of more than 50 different welfare recipients. (# 35, Ex. B at 22-24).

Defendant's sentencing hearing was held on May 19, 2003. Prior to the sentencing hearing, a Presentence Investigation Report ("PSR") was prepared by the United States Probation Office. Included in the materials used by the Probation Officer to prepare the report was an Affidavit of Paul L. Nusbaum, the Secretary of the DHHR, which was also provided to Defendant's counsel on April 4, 2003. (# 35, Ex. C).

In the affidavit, Secretary Nusbaum stated that Defendant's misconduct had required numerous man-hours of investigation and had a significant impact on the Department's ability to assist lower income citizens in West Virginia. Secretary Nusbaum further indicated that the DHHR would be required to reimburse the Federal government for the stolen monies, which were distributed under a grant from the United States Department of Health and Human Services. (Id.)

According to the PSR, Defendant's total offense level under the United States Sentencing Guidelines was calculated to be 19, which included a three-level reduction for acceptance of

2

responsibility. Coupled with a criminal history category of I, Defendant's Guideline imprisonment range was 30-37 months. The PSR did not specify any basis for a departure from this Guideline range.

On May 15, 2003, four days prior to the sentencing hearing, Judge Goodwin entered an Order notifying the parties that he was considering an upward departure from the Guideline range, pursuant to USSG §§ 5K2.0 and 5K2.7, and that the parties would have an opportunity to address the potential departure at the sentencing hearing. (# 35, Ex. D). USSG § 5K2.7 provides for an upward departure if a defendant's conduct resulted in a significant disruption of a governmental function.

On May 16, 2003, Mr. Cosenza filed a motion for a continuance of the sentencing hearing. (# 20). The request for a continuance was denied by a written order on May 16, 2003 (# 21), and again, orally, at the beginning of the sentencing hearing. (# 35, Ex. F at 2, 5).

During the sentencing hearing, the court considered the parties' objections and calculated the Defendant's total offense level at 17, including the reduction for acceptance of responsibility. Based upon that offense level and a criminal history category of I, Defendant's Guideline imprisonment range was determined to be 24-30 months. (# 35, Ex. F at 7-11).

The court then addressed the upward departure. The court heard testimony from Secretary Nusbaum, but ultimately decided to base the determination of a departure for governmental disruption solely upon Secretary Nusbaum's affidavit, which had previously been provided to Mr. Cosenza. (Id. at 22).

The court ultimately departed upward to a sentence of 42 months of imprisonment. (Id. at 29, 35). The Judgment in a Criminal Case was entered on June 5, 2003. (# 35, Ex. E). Defendant did not appeal her conviction or sentence to the United States Court of Appeals for the Fourth Circuit.

On May 11, 2004, Defendant filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (# 28). In that motion, Defendant contended that the district court's notification of the potential upward departure was not given in adequate time for Mr. Cosenza to prepare to address the departure at the sentencing hearing, and that the district court improperly denied a continuance on that basis. (Id. at 5). Defendant also contended that Mr. Cosenza provided ineffective assistance of counsel because he failed to present psychological test evidence that Defendant claims would have called into question her mental competency at the time of the offense. (Id.)

On May 18, 2004, the undersigned directed the United States to file a response to Defendant's motion on or before June 18, 2004. (# 31). However, because the United States Attorney's Office did

4

not receive a copy of the court's order, on July 27, 2004, the undersigned entered another order setting a new deadline for the government's response on August 25, 2004. (# 32).

On August 9, 2004, prior to the filing of the government's response, Defendant filed an amended section 2255 motion. (# 33). In the amended motion, Defendant raised the same claims as those raised in her initial motion; however, she added an additional ground for relief under the Supreme Court's recent decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), claiming that the enhancements imposed in the calculation of her sentence were unconstitutional because they were not based upon conduct admitted by Defendant or found by a jury. (# 33 at 5).

On August 19, 2004, the undersigned entered a Notice and Order advising the parties that Defendant's amended motion would be held in abeyance until rulings had been made by appellate courts concerning the applicability of the Blakely decision.

On August 23, 2004, the United States filed a Response to Defendant's section 2255 motion. The Response contends that Defendant's claim concerning the inadequate notice of the possible upward departure was waived by her failure to file a direct appeal, and further asserts that Defendant cannot demonstrate any prejudice from the timing of the court's notice concerning the upward departure. (Id. at 4-6). The Response further contends that Defendant has not demonstrated that Mr. Cosenza's actions were

5

constitutionally ineffective or that Defendant is entitled to relief under Blakely. (Id. at 6-7).

Defendant did not file a reply brief. The matter is ripe for determination. The undersigned will address each of Defendant's grounds for relief in turn.

## ANALYSIS

### A. Inadequate notice of intent to depart and failure to grant continuance.

Ground One of both of Defendant's motion states:

> Notification was received on May 15th or 16th, 2003 and sentence was to be delivered on May 19, 2003. My attorney ask[ed] for a postponement on Friday, May 16th and again during sentencing on Monday, May 19th and both were denied. We were unable to prepare argument against upward departure.

(# 33 at 5, Ground One).

The government's Response states:

> A Motion to Vacate Sentence is not a substitute for a direct appeal. Non-constitutional claims that could have been raised on direct appeal or not are conclusively waived for purposes of all subsequent collateral proceedings. See, Stone v. Powell, 428 U.S. 465, 477 (1976); United States v. Emmanuel, 869 F.2d 795 (4th Cir. 1989). Even constitutional claims omitted from a direct appeal may be deemed waived unless the movant can show cause and prejudice to sufficiently excuse the appellate default. See, United States v. Frady, 456 U.S. 152 (1982).
>
> Even assuming, arguendo, that defendant could establish some cause for her appellate default of the district court's treatment of the continuance issue, it is immediately evident that she cannot demonstrate any prejudice arising from the court's action. The order [] giving notice of a possible upward departure, entered three days before the sentencing hearing, expressly identified the Guideline provision on which the court was

6

>considering departure - USSG § 5K2.7. Not only did defendant's counsel receive notice of that possibility, but he had previously received the Affidavit that detailed the disruption of governmental activity occasioned by defendant's criminal conduct. Clearly, defendant's counsel was in possession of all information necessary to contest the district court's proposed departure. Defendant's conclusory suggestion that counsel was unable to prepare for the possibility of departure identifies no exculpatory circumstances that might have been developed with additional preparation time. In this case, the district court departed upon information that was both well-established and fully in the possession of defendant and her counsel well before sentencing. Defendant cannot, therefore, demonstrate any prejudice arising from the district court's refusal to continue the sentencing proceedings beyond the time scheduled.

(# 35 at 4-6).

Defendant failed to file an appeal that addressed this issue, and she has not demonstrated adequate cause or prejudice to overcome the appellate default. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that, pursuant to Frady, supra, Defendant has waived this ground for collateral relief.

### B. Ineffective assistance of counsel.

In Ground Two of both of her motions, Defendant claims that Mr. Cosenza provided constitutionally defective counsel because he "failed to present to the court [her] psychological tests which questioned [her] ability to judge right from wrong during [the] period in which [the] offense took place." (# 33 at 5, Ground Two). Defendant provides no additional support for this claim.

7

In <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), the United States Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> at 687-91. Moreover, "judicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689.

The government's Response states:

> In this case, defendant has attempted to satisfy this standard by alleging that her attorney failed to present appropriate psychological tests to the court. It is unclear, however, to what tests defendant is referring. She has failed to specifically identify any information beyond the material provided to the court at sentencing regarding her prior emotional problems that could have been presented by Mr. Cosenza. To the extent that defendant is suggesting that there was psychological evidence that would have fully negated her culpability, she would seem to be suggesting that the guilty plea, itself, was involuntary. There is, however, no support offered for that assertion and, indeed, it would contradict her own assertions of competence at both the plea hearing and at sentencing.

(# 35 at 6-7). The government's Response adds that "at sentencing, the district court noted that it had originally intended to give [defendant] a higher sentence until it heard defendant discuss her own previous psychological and emotional problems." (<u>Id.</u> at 7). Thus, the government contends that, "to the extent that defendant's mental condition was relevant to her case, it was properly

8

presented and duly considered by the court in determining defendant's appropriate sentence." (Id.)

During Defendant's allocution, she stated:

> I would just like to go back to January of 2000 where I suffered a nervous breakdown. And though I don't blame everything I've done on that, I believe that that was the beginning of the end for me. I'm not pleading insanity, although I truly believe I have a mental illness that has went undiagnosed.
>
> I am currently diagnosed with severe depression, panic attacks, and borderline bipolar tendencies. But I think it is more than that, and I've not been able to get a true diagnosis. I've seen several psychiatrists and therapists, but about the time we think we're going to get a breakthrough, they leave town or they move to where my insurance won't cover their area and I have to start all over again. So, I've had like three or four different psychiatrists.
>
> I've been on several different medications because every psychiatrist you go to has a different perspective on what your problem is. After my nervous breakdown in January, my whole personality changed. And if you ask anyone, anyone that knows me, you will find out that I became a different person at that time. Everything I did was not characteristic of me. I became agitated, had panic attacks, sometimes eight and ten a day, and was on several types of medication, as I've said.
>
> * * *
>
> At this time, I also had a loss of, major loss of memory and was tested for a stroke, but it was negative. The doctor just told me I was under too much stress.

(# 35, Ex. F at 32-33).

Defendant is claiming that Mr. Cosenza failed to introduce additional psychological evidence concerning her competency at the time of the offense. The test used to determine whether a defendant was incompetent or insane at the time of the crimes

9

requires that the defendant lacked substantial capacity either to appreciate the criminality of her conduct, or to conform her conduct to the requirements of the law. United States v. Chandler, 393 F.2d 920 (4th Cir. 1968)(en banc).

Despite Defendant's explanation of her mental and emotional problems at her sentencing hearing, there is no evidence of record to demonstrate that she lacked the substantial capacity either to appreciate the criminality of her conduct or to conform her conduct to the requirements of the law. Furthermore, she has not demonstrated that any additional evidence would have resulted in a different sentence. Thus, as stated by the government, "Defendant cannot plausibly suggest that she was prejudiced by her attorney's failure to present some other unidentified evidence regarding her mental condition." (# 35 at 7).

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that her counsel was ineffective by failing to introduce psychological evidence in her criminal proceedings.

C. **Blakely claim**.

In Ground Three of her amended motion, Defendant asserts that she was "deprived of constitutional rights for sentencing to be found and judged upon a jury (Blakely vs. Washington)." (# 33 at 5, Ground Three). In Blakely v. Washington, 124 S. Ct. 253 (2004), the Supreme Court held that: "Other than the fact of a prior

10

conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The <u>Blakely</u> Court further noted that the term "statutory maximum" as used for purposes of <u>Apprendi</u> means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

On January 12, 2005, the Supreme Court decided <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), which reaffirmed the Court's holding in <u>Apprendi</u>, applied the holding in <u>Blakely</u> to the United States Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. It is on this basis that Defendant now challenges the enhancements and the upward departure imposed in the calculation of her sentence.

First, the undersigned notes that Defendant's attempt to amend her section 2255 motion was untimely under Rule 15(c)(1) because it was filed outside the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). Because Defendant did not seek an appeal, her judgment became final on or about June 15, 2003, and the one-year limitations period began to run from that date. Therefore,

any claims raised under 28 U.S.C. § 2255 had to be filed by June 15, 2004. Although Defendant's initial motion was timely, her attempt to amend the motion to add a claim under Blakely (and Booker) was not.

To the extent that Defendant contends that the time limitation on her Blakely claim should run from the date of that decision, which was June 24, 2004, or from January 12, 2005, the date of the Booker decision, the undersigned proposes that the presiding District Judge **FIND** that Defendant is still not entitled to relief on this claim.

The Booker[1] holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). Defendant's case has concluded direct review and is final. Thus Booker does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

Seven Circuit Courts of Appeals have ruled that Booker does not apply retroactively to cases on collateral review. In McReynolds v. United States, 397 F.3d 479, 480-81 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005), the Court held:

---

[1] Because the Booker decision applied the holding in Blakely to the Sentencing Guidelines, under which Defendant was convicted, the undersigned will analyze Defendant's claim under Booker.

12

Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, ___ U.S. ___, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.

*Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." ___ U.S. ___, 124 S. Ct. at 2523. It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid*. That is no less true of *Booker* -- or for that matter *Apprendi* itself. We held in *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." That, too, is equally true of *Booker*. No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.

The remedial portion of *Booker* drives the point home. The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs. District judges must continue to follow their approach *as guidelines*, with appellate review to determine whether that task has been carried out reasonably. No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently, *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.

\* \* \* The Court held in *DeStefano v. Woods*, 392

>U.S. 631, and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more accurate. ___ U.S. at ___, 124 S. Ct. at 2525. What is more, *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing facts will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process. *See also Curtis*, 294 F.3d at 843-44.
>
>We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005. That date, rather than June 24, 2004, on which *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004, came down, is the appropriate dividing line.

In Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005), the Second Circuit held that "neither Booker nor Blakely appl[ies] retroactively to [a] collateral challenge." In Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005), the Eleventh Circuit held "that Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to a § 2255 on collateral review." In Humphress v. United States, 398 F.3d 855, 863 (6th Cir. 2005), pet. for cert. filed, No. 05-5130, the Sixth Circuit ruled that:

>We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law

14

does not reach than did the judicial factfinding addressed in *Ring*. The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. *Beard [v. Banks]*, 124 S. Ct. [2504], 2513-14 [(2004)]. We hold that *Booker*'s rule does not either.

In United States v. Price, 400 F.3d 844, 848 (10th Cir. 2005), pet. for cert. filed, No. 04-10694, the Tenth Circuit held that Blakely was a new rule of criminal procedure that was not subject to retroactive application on collateral review. In Lloyd v. United States, 407 F.3d 608, 615-16 (3d Cir. 2005), the Third Circuit held that "*Booker* announced a rule that is 'new' and 'procedural,' but not 'watershed;'" thus it does not apply retroactively to § 2255 motions filed in cases which were final as of January 12, 2005. In Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005), the Ninth Circuit held that Blakely did not announce a watershed rule of criminal procedure, and quoted approvingly from Price.

Based on McReynolds, Green, Varela, Humphress, Price, Rucker, Lloyd, and Schardt, the undersigned proposes that the presiding District Judge **FIND** that Movant's conviction was final before Blakely and Booker were decided, and that neither Blakely nor Booker applies retroactively on collateral review.

For all of the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** both Defendant's section 2255 motion (# 28) and her amended motion (# 35).

15

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Leona M. West, to counsel of record, and to Judge Goodwin.

<table>
<tr><td>August 31, 2005<br>Date</td><td>/s/ Mary E. Stanley<br>Mary E. Stanley<br>United States Magistrate Judge</td></tr>
</table>

17